Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS FARLEY,<br><br>    Plaintiff,<br><br>v.<br><br>NET ELEMENT, INC., OLEG FIRER, JON NAJARIAN, JOHN ROLAND, and TODD RAARUP,<br><br>    Defendants. | Case No:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Thomas Farley ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against Net Element, Inc. ("Net Element" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Net Element and Mullen

1

Automotive, Inc. ("Mullen"), Mullen Acquisition, Inc. ("Merger Sub"), and Mullen Technologies, Inc. ("Mullen Technologies").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City, including through the marketing and sales of its products.[1]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Net Element common stock.

---

[1] Additionally, the Company reportedly participated in conferences in New York City in recent years.

7. Defendant Net Element is a financial technology company that provides payment acceptance and value-added solutions across various channels in North America, Russia, and the Commonwealth of Independent States. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "NETE."

8. Defendant Oleg Firer ("Firer") is Chief Executive Officer and Executive Chairman of the Board of the Company.

9. Defendant Jon Najarian ("Najarian") is a director of the Company.

10. Defendant John Roland ("Roland") is a director of the Company.

11. Defendant Todd Raarup ("Raarup") is a director of the Company.

12. Defendants Firer, Najarian, Roland, and Raarup are collectively referred to herein as the "Individual Defendants."

13. Defendants Net Element and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

14. On August 5, 2020, Net Element announced the execution of a definitive agreement to merge with Mullen Technologies in a stock-for-stock reverse merger in which Mullen Technologies stockholders will receive a majority of the outstanding stock in the post-merger company. Under the terms of the agreement, Merger Sub will acquire all the outstanding shares of Mullen Technologies. Upon completion of the Proposed Transaction, Net Element shareholders will own 15% and Mullen Technologies shareholders will own 85% of the issued and outstanding shares of the combined company. Net Element has the right to acquire up to an additional 6.7% of the combined company depending on the amount of loans from Net Element to Mullen

Technologies prior to closing. The press release announcing the Proposed Transaction states, in pertinent part:

### Net Element Enters Definitive Merger Agreement with Electric Vehicle Company Mullen Technologies

August 05, 2020 08:45 ET | Source: Net Element, Inc.

MIAMI, Aug. 05, 2020 (GLOBE NEWSWIRE) -- **via NetworkWire** -- **Net Element, Inc. (NASDAQ: NETE)** ("Net Element" or the "Company") today announced the execution of a definitive agreement to merge with privately-held Mullen Technologies, Inc. ("Mullen"), a Southern California-based electric vehicle company, in a stock-for-stock reverse merger in which Mullen's stockholders will receive a majority of the outstanding stock in the post-merger Company.

**Highlighted Terms of the Definitive Merger Agreement:**

Under the terms of the agreement, Net Element's wholly owned, newly formed subsidiary will acquire all the outstanding shares of Mullen. Upon completion of the merger, Net Element shareholders will own 15% and Mullen shareholders will own 85% of the issued and outstanding shares of the combined Company. Net Element has the right to acquire up to an additional 6.7% of the combined Company depending on the amount of loans from Net Element to Mullen prior to closing.

Immediately prior to completion of the merger, Net Element will, subject to Net Element's stockholders' approval, divest itself of its payments-processing business and portfolio. The completion of the merger is subject to shareholder and NASDAQ approval, as well as other conditions referenced in the merger agreement. Upon closing of the merger, Net Element's current management team and board of directors will resign and be replaced by a management team led by David Michery, Mullen's founder, chairman and chief executive officer and the Mullen-nominated board of directors. The Company has obtained a fairness opinion satisfactory to its board of directors, and each company's board of directors has approved the execution of the merger agreement. Mullen's shareholders have approved the execution of the merger agreement and the transactions contemplated in such agreement.

\* \* \*

**About Mullen Technologies:**
Mullen Technologies is a Southern California-based licensed electric vehicle manufacturer with international distribution that operates in various verticals of businesses focusing in the automotive industry: Mullen Automotive, Mullen Energy, Mullen Auto Sales, Mullen Funding Corp., and CarHub. Each of these

divisions provide Mullen with diversity of different products and services within the automotive industry.

For more information, please visit: www.MullenUSA.com.

**About Net Element**
Net Element, Inc. (NASDAQ: NETE) operates a payments-as-a-service transactional and value-added services platform for small to medium enterprise ("SME") in the U.S. and selected emerging markets. In the U.S., the Company aims to grow transactional revenue by innovating SME productivity services using blockchain technology solutions and Aptito, its cloud-based, restaurant and retail point-of-sale solution. Internationally, Net Element's strategy is to leverage its omni-channel platform to deliver flexible offerings to emerging markets with diverse banking, regulatory and demographic conditions. Net Element was ranked as one of the fastest growing companies in North America on Deloitte's 2017 Technology Fast 500™. In 2017, Net Element was recognized by South Florida Business Journal as one of 2016's fastest-growing technology companies.

15. On May 14, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

16. The Registration Statement, which recommends that Net Element shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Net Element's and Mullen Technologies' financial projections; (ii) the financial analyses performed by Net Element's financial advisor, Alexander Capital, LP ("Alexander Capital"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Alexander Capital.

17. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of Net Element's Board of Directors and Reasons for the Merger; and (ii) Opinion of Financial Advisor.

18. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Net Element shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Net Element's and Mullen Technologies' Financial Projections

19. The Registration Statement omits material information concerning Net Element's and Mullen Technologies' financial projections.

20. The Registration Statement provides that, in connection with its fairness opinion, Alexander Capital "reviewed certain [] internal financial analyses and forecasts prepared by (i) the management of Mullen relating to its business and (ii) the management of Net Element relating to the respective business of Net Element and Mullen[.]"

21. The Registration Statement, however, fails to disclose Net Element's and Mullen Technologies' financial projections, despite the fact that such projections were prepared by the respective managements of Net Element and Mullen Technologies, and were relied upon by Alexander Capital in connection with its fairness opinion and related financial analyses. This information is further material as Net Element shareholders are expected to own approximately 15% of the outstanding shares of the combined company, but without Mullen Technologies' financial projections, Net Element shareholders cannot adequately evaluate and assess the value of Mullen Technologies or the combined company.

22. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses

6

performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

23. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Alexander Capital's Analyses**

24. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Alexander Capital.

25. The Registration Statement fails to disclose the following concerning Alexander Capital's "*Discounted Cash Flow Analysis*": (1) the Mullen forecast provided by Mullen's management to Net Element's management, and all underlying line items; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.0% to 20.0%, and (ii) perpetual growth rates ranging from 2.0% to 5.0%; (3) the value of Mullen's balance sheet to April 30, 2021; (4) Mullen's unlevered cash flow for years ending December 31, 2021 through 2030, and all underlying line items; (5) the range of terminal values for Mullen; and (6) the current outstanding shares of Net Element.

26. With respect to Alexander Capital's "*Precedent Transaction Analysis*," the Registration Statement fails to disclose the implied multiples and discount rates used by Alexander Capital in its analysis.

27. With respect to Alexander Capital's "*Public Comparable Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each

7

company Alexander Capital observed in its analyses.

28. The Registration Statement fails to disclose the following concerning Alexander Capital's "*Present Value of Future Share Price Analysis*": (1) the Mullen forecasts, and the adjustments made to such forecasts by Alexander Capital, and all underlying line items of both forecasts; and (2) the individual inputs and assumptions underlying the (i) multiple of 15.0x and of 3.2x, and (ii) range of discount factors from 9.0% to 20.0%.

29. The valuation methods, underlying assumptions, and key inputs used by Alexander Capital in rendering its purported fairness opinion must be fairly disclosed to Net Element shareholders. The description of Alexander Capital's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Net Element shareholders are unable to fully understand Alexander Capital's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

    **3. Material Omissions Concerning Potential Conflicts of Interest Involving Alexander Capital**

30. The Registration Statement omits material information concerning potential conflicts of interest involving Alexander Capital.

31. The Registration Statement provides that, "[f]or its services in rendering its opinion, we have agreed to pay [Alexander Capital] a fee of $[•] which is not contingent upon either the conclusion expressed in the opinion or the consummation of the Merger, and a portion of which became payable upon the execution of Alexander Capital's engagement letter and the balance of which became payable upon the delivery of Alexander Capital's opinion."

8

32. The Registration Statement thus fails to disclose the specific amount of compensation Alexander Capital has received or will receive in connection with its engagement by the Company.

33. The Registration Statement further fails to disclose the timing and nature of the past services Alexander Capital and/or its affiliates provided Net Element, Mullen Technologies, and/or their affiliates, including the amount of compensation Alexander Capital received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

34. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

35. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

38. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

39. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

42. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual

Defendants.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 8, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*